

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

November 6, 1963

Honorable John H. Winters          Opinion No. C-172
Commissioner
State Department of Public          Re: Whether the State Depart-
  Welfare                                ment of Public Welfare is
Austin, Texas                            authorized to continue
                                         their agreements with the
                                         Federal Government as re-
Dear Mr. Winters:                        gards the Merit System.

        Your opinion request states that the State Department
of Public Welfare, hereinafter referred to as the Department,
receives substantial grants-in-aid necessary to its operation
from the Federal Government.  As a condition of qualifying for
such grants, agreements are made with the Federal Government which
include the requirement that the Merit System of Personnel Adminis-
tration be followed by the Department.  You state that:

        "Over a period of years the State Depart-
    ment of Public Welfare has officially operated
    under a Merit System of Personnel Administration
    as required by Titles I, IV, Section 3 of V, X,
    and XIV of the Federal Social Security Act, and
    as authorized by Section 4, Subsection (10) of
    the Public Welfare Act of 1941, as amended, being
    House Bill No. 611, Acts of the 47th Legislature,
    Regular Session, 1941, and being codified as Arti-
    cle 695c, Vernon's Civil Statutes."

        Your request states that under the above Merit System
salary increases are based on written satisfactory evaluation of
work performed and are not automatic, and therefore in principle
are similar to the Merit Salary Increases provisions in Article V,
Section 1, Subsection L of House Bill 86, Acts of the 58th Legis-
lature, 1963.  However, the provisions of these two plans are not
identical, particularly as to the length of time required between
merit increases, the initial date that such merit can be recognized,
and the number of employees eligible for such recognition.

-831-

Article V, Section 1 of House Bill 86 states that, except where otherwise specifically provided, expenditures for employees' salaries in classified positions shall be governed by and be in conformity with the provisions of such Section. However, within the provisions of House Bill 86 relating to the Department, the following appears at page III-186:

"Salary adjustments and merit system increases shall be governed by agreements with the Federal Government provided, however, that such agreements do not exceed the provisions in this Act governing the operation of the State Employees Classification Plan."

You therefore ask our opinion concerning the following question:

"Do the Statutes and the Appropriation Act permit a Salary Classification Plan under the Merit System Rule with a beginning step for each position not above Step 1 of the State Salary Classification Schedule and for intermediate steps to which employees may be advanced at stated intervals as may be agreed by the State Department of Public Welfare and the Federal Agency so long as the maximum salary paid does not exceed the maximum for the group to which the employee is assigned as provided in the State Classification Salary Schedule under the State Salary Classification Plan?"

The use of the Merit System by the Department was first authorized in 1941 when the Legislature enacted Article 695c which provides at Section 4 (10) that the Department shall:

"(10) Have authority to establish by rule and regulation a Merit System for persons employed by the State Department of Public Welfare in the administration of this Act; and shall provide by rule and regulation for the proper operation and maintenance of such Merit System on the basis of efficiency and fitness; and may provide for the continuance in effect of any and all actions heretofore taken in pursuance of the purposes of this subsection. The State Department is empowered and authorized to adopt regulations that may be necessary

to conform to the Federal Social Security Act
approved March 14, 1935, as amended, and shall
have the power and authority to provide for the
maintenance of a Merit System in conjunction
with any Merit System applicable to any other
State agency or agencies operating under the
said Social Security Act as amended.

"The Social Security Board shall exercise
no authority with respect to the selection, ten-
ure of office, and compensation of any individual
employed in accordance with such methods."

After some twenty years of operation by the Department
under the Merit System Rule, the Legislature again acknowledged
such in the "Position Classification Act of 1961," codified as
Article 6252-11, Vernon's Civil Statutes, which recites in Sec-
tion 5 that:

". . .

"The preceding two paragraphs of this
Section, however, shall not be construed as
abrogating statutory authorizations for cer-
tain State agencies to operate under employee
merit systems as a condition for qualifying
for Federal grants-in-aid; and all such merit
systems as have been or may hereafter be agreed
to by the respective State agencies and agencies
of the U.S. Government shall be in full force
and effect, subject only to the applicable laws
of this State."

In addition, it is also observed that while the Depart-
ment is covered by the classification of employees, its employees
are not fully within the salary schedule accompanying such clas-
sification. In nearly every instance maximum salaries are no high-
er than an amount equal to Step 3 of the Salary Schedule, and there-
fore starting salaries usually fall below that prescribed by Step
1. The only counterbalance to these deficiencies is the Merit
System which allows for the continued and regular recognition of
meritorious service.

A consideration of all of the foregoing factors leads
us to the conclusion that the Legislature was well aware that the
Department's operation is substantially affected by agreements with
the Federal Government, and that it recognized the condition of a
Merit System in order to qualify for such grants-in-aid.

Further, in viewing the Classification System broadly as a plan to place all State employees of a same class on an equal basis as far as possible, we are unable to perceive how the continuation of the agreements with the Federal Government will violate this principle with the fact in mind that the Department is already at a comparative disadvantage salary-wise.

Therefore, in consideration of all of these factors, it is our opinion that the Department's agreement as set forth in the question presented is authorized and that a continuation of the Merit System is authorized.

### S U M M A R Y

Agreements between the State Department of Public Welfare and the Federal Government, as regards the Merit System, are authorized so long as beginning salaries do not exceed Step 1 and maximum salaries do not exceed Step 7 of the Salary Classification Schedule.

Very truly yours,

WAGGONER CARR
Attorney General

By: Paul Phy
Paul Phy
Assistant

PP:mkh

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
Pat Bailey
Paul Robertson
Nicholas Irsfeld
George Gray

APPROVED FOR THE ATTORNEY GENERAL
BY: Stanton Stone